NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH MITCHELL, | |
| Plaintiff, | OPINION |
| v. | Civil Action No.: 10-2354 (JLL) |
| C&S WHOLESALE GROCERS, INC., et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court on a motion to dismiss Plaintiff's Complaint filed by Defendant C&S Wholesale Grocers, Inc. ("C&S"). After C&S filed its motion, Plaintiff filed an Amended Complaint. No previous amendment had been filed, and C&S had not filed an Answer. Therefore, the amendment was filed as of right. See Fed. R. Civ. P 15(a); Centifani v. Nix, 865 F.2d 1422, 1431 n.9 (3d Cir. 1989). The Amended Complaint only adds Woodbridge Logistics LLC ("Woodbridge") as a defendant. The amendment does not change any of the claims or allegations asserted by Plaintiff in the original Complaint. By letter dated June 16, 2010, Woodbridge joined in C&S's motion to dismiss. Therefore, the Court treats the motion to dismiss filed by C&S as a motion of all defendants to dismiss Plaintiff's Amended Complaint.

Plaintiff's Amended Complaint asserts claims against all defendants for: (1) violations of the New Jersey Wage and Hour Law ("NJWHL") (Count I); (2) violations of the New Jersey Wage Payment Act ("NJWPA") (Count II); (3) violations of the Fair Labor Standards Act ("FLSA") (Count III); (4) common law whistle-blower/retaliation (Count IV); breach of express and implied contract and breach of the implied covenant of good faith and fair dealing (Counts V, VI, and VII); and (5) violations of New Jersey's Law Against Discrimination ("NJLAD")

based on disability discrimination and retaliation (Counts VIII and IX). The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion to dismiss is granted in part and denied in part.

I.      BACKGROUND

Plaintiff asserts that he "worked for C&S and/or Woodbridge Logistics" as an Occupational Health Nurse from January 2003 until his termination in November 23, 2008. (Am. Compl. ¶¶ 4, 21.[1]) He alleges that from "December 2004 to October 2007, [he] worked approximately in excess of twenty-one (21) hours of overtime each week." (Id., at ¶ 47.) He also alleges that he was not paid any overtime until approximately November 2007. (Id., at ¶¶ 12, 56.)

Plaintiff alleges that "in approximately October 2007, the United States Department of Labor, Wage and Hour Division ("DOL") performed an audit of C&S and uncovered that [Plaintiff] and others similarly situated were intentionally misclassified as exempt employees." (Id., at ¶ 13.) Prior to October 2007, Plaintiff alleges that "Defendants failed to post overtime posters in the work place," "failed to advise employees of their overtime rights," and "failed to train [him] on his overtime rights." (Id., at ¶¶ 33-35.) After the DOL audit, Plaintiff alleges that the DOL filed a complaint on his behalf and on behalf of other workers. (Id., at ¶ 14.) On July 3, 2008, Plaintiff alleges that "Defendants attempted to resolve the overtime violation cases [by] . . . offer[ing] [him] a paltry sum of money." (Id., at ¶ 19.) Plaintiff rejected the offer. (Id., at ¶ 20.)

---

[1] In paragraph 59 of the Amended Complaint, Plaintiff asserts that he was terminated on February 23, 2008. This appears to be a typographical error given the other allegations in the Amended Complaint.

Plaintiff also alleges that "Defendants overworked and underpaid [him] which caused him to suffer from complete renal failure which resulted in him going on dialysis in March 2008." (Id., at ¶ 15.) He states that "[r]ather than allow [him] to work less hours and accommodate him due to his [renal failure], Defendants provided [him] a computer so that he could spend some of his work day working from home and maintain working long hours." (Id., at ¶ 17.) Plaintiff went on disability leave on May 20, 2008. (Id., at ¶ 18.) Plaintiff's disability leave period was six months, requiring him to return to work on November 20, 2008. (Id., at ¶¶ 22-23.) Plaintiff alleges that "[o]n November 13, 2008, Defendants sent [Plaintiff] correspondence that advised him, for the first time, that because he was out on disability since May 20, 2008, 'his name has been [sic] inactivated on our employment roster effective November 23, 2008.'" (Id., at ¶ 21.)

## II.  LEGAL STANDARD

For a complaint to survive dismissal under Rule 8, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. Id. In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated.

## III. DISCUSSION

Defendants challenge Plaintiff's NJWHL and FLSA claims (Counts I and III) solely on the ground that they are time-barred. They argue that the NJWPA claim (Count II) should be dismissed because the NJWPA does not cover claims based simply on a failure to pay overtime compensation. They argue the other claims–the contract claims (Counts V, VI, and VII), the common law retaliation claim (Count IV), and the NJLAD claims (Counts VIII and IX)–should be dismissed because the claims are insufficiently pled. Finally, C&S argues that all claims against it should be dismissed because Woodbridge, not C&S, was Plaintiff's employer.

### A. NJWHL and FLSA Claims

Plaintiff brings claims under the NJWHL and FLSA for failure to pay overtime from January 2003 until approximately November 2007. (Am. Compl. ¶ 12.[2]) Plaintiff filed his original Complaint on April 10, 2010. Claims brought pursuant to the NJWHL must be filed within two years of the date of accrual of an alleged violation. N.J.S.A. § 34:11-56a25.1. Claims brought pursuant to the FLSA also have a two-year statute of limitations, unless the violation is willful, which extends the limitations period to three years. 29 U.S.C. § 255(a). Generally, "[a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed." Genarie v. PRD Mgmt., Inc., No. 04-2082, 2006 WL 436733, at *14 (D.N.J. Feb. 17, 2006) (alteration in original). Despite asserting that

---

[2] In other allegations of the Amended Complaint, Plaintiff asserts that he "should have received overtime pay" from December 2004 to November 2007. (Am. Compl. ¶ 30; see also id., at ¶ 47.) In any amendment, Plaintiff should clarify these dates, but any inconsistency is not relevant for purposes of the present motion.

overtime violations occurred as early as January 2003, Plaintiff argues that none of the alleged violations accrued prior to October 2007.

Plaintiff argues that "under 29 C.F.R. § 516.4, employers are required to post mandatory notices of workers' statutory minimum wage and overtime rights and [that] 'an employer's failure to post a statutorily required notice . . . tolls the running of any period of limitations.'" (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl. Pursuant to Rule 12(b)(6) [hereinafter "Pl.'s Opp'n"], at 21 (quoting Kamens v. Summit Stainless, Inc., 586 F. Supp. 324, 328 (E.D. Pa. 1984).) The Amended Complaint alleges that "Defendants failed to post overtime posters in the workplace," "failed to advise employees of their overtime rights," and "failed to train [Plaintiff] on his overtime rights prior to October 2007." (Am. Compl. ¶¶ 33-35.) Thus, Plaintiff argues that the period of limitations was tolled at least until October 2007. Defendants do not address the merits of this tolling argument, arguing instead that, even if the claims are tolled until October 2007, the action was still not filed within two years of that date. Because Defendants do not address the merits of this argument, in analyzing the statute of limitations arguments made by the parties for purpose of the present motion, the Court will use October 2007 to November 2007 as the accrual dates for Plaintiff's NJWHL and FLSA claims.

Plaintiff's action was clearly filed more than two years from any of the alleged overtime violations even using an October or November 2007 accrual date; Plaintiff does not allege that any overtime violation occurred after November 2007. Plaintiff nevertheless argues that the NJWHL claims were timely filed because the limitations period should be equitably tolled. He argues that the FLSA claims were timely filed either because of equitable tolling or because the three year limitation period for willful violations applies in this case.

The Third Circuit has identified three situations in which equitable tolling may be appropriate: "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998) (internal quotations omitted). The burden is on the plaintiff to demonstrate that he exercised reasonable diligence and that equitable tolling is appropriate. See Byers v. Follmer Trucking Co., 763 F.2d 599, 600-01 (3d Cir. 1985). Additionally, the Third Circuit has made clear that equitable tolling is an extraordinary remedy which should be applied only sparingly. Podobnik v. United States Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005).

Plaintiff alleges that in approximately October 2007, the DOL audited Defendant C&S and found that "Plaintiff and others similarly situated were intentionally misclassified as exempt employees." (Am. Compl. ¶ 13.) Subsequent to the investigation, Plaintiff alleges that the DOL filed a complaint on behalf of Plaintiff and other similarly situated employees. (Id., at ¶ 14.) Plaintiff alleges: "Defendants attempted to resolve the overtime violation cases and offered a paltry sum of money to resolve the matter with [Plaintiff] on July 3, 2008." (Id., at ¶ 19.) Finally, Plaintiff argues that "[i]t was not until Defendant's July 2008 demand, in the form of a 'settlement offer,' . . . that Plaintiff realized Defendant was disputing the money owed and was outright refusing to pay." (Pl.'s Opp'n, at 23.)

Plaintiff asserts that as early as October 2007 notices were posted by Defendants informing him of his overtime rights. He clearly knew that he had not been paid overtime prior to this period. He makes no allegations as to what steps he took, if any, to determine if he had a cause of action at that time. He also alleges that the DOL requested information from him in

December 2007. Thus, arguably he knew or should have known that he may have a claim at least by this date.

More importantly, although he alleges that Defendants made a settlement offer in July 2008, he makes no allegations of any discussions that he had with Defendants between December 2007 and July 2008 regarding the investigation or Defendants' position on the DOL's findings. He alleges no fraudulent or deceptive conduct by Defendants during this period meant to lull him into a false sense of security regarding their willingness to settle and the expected sufficiency of any settlement. The Amended Complaint merely alleges that the attempted to resolve the matter in July 2008. In his opposition papers, Plaintiff provides additional detail related to the settlement. Even if the additional facts would be sufficient to support an argument for equitable tolling, which the Court does not find, Plaintiff may not amend his complaint through statements made in his opposition brief. See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). For these reasons, the Court finds that Plaintiff has not plead sufficient facts to justify the extraordinary use of equitable tolling. Thus, his claims accrued more than two years prior to the filing of his original Complaint.

Plaintiff argues that, even if equitable tolling is not found to preserve his NJWHL claim, his FLSA claim is not time barred because the three, not two, year limitations period for willful violation applies. To state a claim for a willful violation of the FLSA, more than an ordinary violation must be alleged. See Frasier v. General Electric Co., 930 F.2d 1004, 1009 (2d Cir. 1991); see also Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ., 579 F.3d 546, 553 (5th Cir. 2009) (applying the two, not three, year limitations period because the plaintiff "ha[d] not provided evidence that [the employer] actually knew that the pay structure violated the FLSA, or that [it] ignored or failed to investigate [her] complaints"). Thus, in accordance with

Iqbal, it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation.

Defendants argue that "Plaintiff's sole argument for use of the three-year statute of limitations under the FLSA is . . . his allegation that the US DOL supposedly found a violation in late 2007." (Def. C&S Wholesale Grocers, Inc.'s Reply Mem. of Law in Further Supp. of Its Mot. to Dismiss Pl.'s Compl. Pursuant to Rule 12(b)(6) [hereinafter 'Defs.' Reply"], at 4.) The Court disagrees. Plaintiff does not merely allege that the DOL found a violation, he alleges that it found that Defendants *intentionally* mis-classified Plaintiff's and others' employee status. At this stage of the proceedings, this is sufficient to support a willful violation FLSA claim. The accrual dates for the violations alleged by Plaintiff are within three years of the date of filing of the original Complaint. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's FLSA claims. But, because the violations accrued more than two years from the date of filing, Defendants' motion to dismiss Plaintiff's NJWHL claims is granted. The NJWHL claims are dismissed without prejudice.

    B.    **NJWPA Claim**

Defendants argue that the NJWPA does not cover claims based solely on a failure to pay overtime theory. On the other hand, Plaintiff points to various provisions of the NJWPA and argues that he has provided sufficient factual support for his claims. N.J.S.A. § 34:11-4.4 provides that "[n]o employer may withhold or divert any portion of an employee's wages unless [certain statutory condition are met]." N.J.S.A. § 34:11-4.3 provides:

> Whenever an employer discharges an employee, or when the work of an employee is suspended as a result of a labor dispute, or when an employee for any reason whatsoever is laid off, or whenever an employee quits, resigns, or leaves employment for any reason, the employer shall pay the employee all wages due

> not later than the regular payday for the pay period during which the employee's termination, suspension or cessation of employment (whether temporary or permanent) took place . . . .

Plaintiff argues in his opposition brief that "prior to Plaintiff's termination, Defendant had conceded that Plaintiff was intentionally misclassified and admitted that Plaintiff should have been, but was not, paid overtime." (Pl.'s Opp'n, at 8.) Plaintiff asserts that this amount of due wages was not paid to Plaintiff upon his termination within the NJWPA's requirements. He also argues that "[f]rom approximately January 2003 until approximately November 2007, Defendant withheld and/or diverted payment for hours worked in excess of 40 hours per week." (Id., at 9.) In other words, Plaintiff argues that the failure to pay overtime alone was a "withholding" or "diversion" of wages that violated the NJWPA.

Most of the allegations made in Plaintiff's opposition brief are not in his Amended Complaint. In his Amended Complaint, other than general allegations incorporated by reference, Plaintiff simply alleges: "The actions of Defendants give rise to a violation of the New Jersey Wage Payment Act." (Am. Compl. ¶ 66.) Earlier in the Amended Complaint, Plaintiff alleged that "Defendants engaged in willful acts to not pay [Plaintiff] overtime pay." (Id., at ¶ 29.) As noted above, Plaintiff may not amend his complaint through his opposition brief; the Court will only consider the allegations actually made in the Amended Complaint. The Amended Complaint does not allege that Defendants conceded to Plaintiff that they owed him back overtime wages, much less allege an admitted amount due but not paid. It also does not allege any "deduction" or "withholding" from identified earned wages. It simply alleges that Defendants failed to pay him overtime.

Additionally, Plaintiff has cited no case to support his proposition that such basic overtime claims are properly brought under the NJWPA in addition to or in lieu of the NJWHL.

Generally, claims for failure to pay overtime are brought under the NJWHL, N.J.S.A. §§ 34:11-56a et seq., whereas claims that wages have not been timely paid or that inappropriate deductions by the employer have been made, such as deductions for office expenses, are brought under the provisions of the NJWPA.  See, e.g., Levy v. Verizon Info. Servs., 498 F. Supp. 2d 586, 596-597 (E.D.N.Y. 2007) ("To establish an unlawful wage claim under . . . [the NJWPA], plaintiffs would be required to show that [the defendant] deducted monies from their earned wages and that such deductions are not permissible under the respective state statute."); Bachrach v. Chase Inv. Servs. Corp., No. 06-2785, 2007 WL 3244186, at *1-2 (D.N.J. Nov. 1, 2007) (claims for pure overtime violations brought under the NJWHL and claims for alleged improper deductions for office expenses brought under the NJWPA); Hyman v. WM Fin. Servs., No. 06-4038, 2007 WL 1657392, at *3 (D.N.J. June 7, 2007) (noting that claims brought for "impermissible deductions" for overhead expenses were "very different claims" than one that "merely [sought] overtime due for worked performance in excess of 40 hours per week"). Therefore, the Court finds that Plaintiff has failed to sufficiently allege a violation under the NJWPA as opposed to the NJWHL.

In its reply brief, Defendants also argue that Plaintiff's NJWPA claims are also barred by the two year statute of limitations applicable to the NJWHL.  Because Defendants raise this issue for the first time in its reply, the Court will not consider this argument.  See Laborers' Int'l Union v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994).  For these reasons, the Court grants Defendants' motion to dismiss the NJWPA claims.  They are dismissed without prejudice.

### C. Breach of Contract Claims

To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). With respect to the breach of express contract claim, Plaintiff alleges that "Defendants had contractual obligations to plaintiff that were set forth in their oral representations and/or their handbook and other employment documents." (Am. Compl. ¶ 80.) He further alleges that "Defendants' actions breached the contractual obligations set forth in these documents." (Id., at ¶ 81.) With respect to his breach of implied contract claims, Plaintiff alleges that "Defendants had contractual obligations to plaintiff that were set forth in their oral representations and actions." (Id., at ¶ 86.) He further alleges that "Defendants' actions breach the contractual obligations set forth in these communications." (Id., at ¶ 87.) Plaintiff makes no specific allegations regarding these claims. He does not identify the oral representations or actions which form the basis for the express or implied contract claims. As Defendants point out, he also does not point to any specific provision or language in the employee handbook(s) or "other employment documents" which he claims created a contractual obligation and how that specific obligation was breached.

In their briefs, the parties make many arguments regarding whether or not the employee handbook created a contractual obligation between them separate from the general, pre-existing obligation to pay Plaintiff for his work. However, Plaintiff's allegations related to his contract claims amount to nothing more than the most basic threadbare recitals of a breach of contract claim. Such bare allegations do not meet the Iqbal-Twombly pleading standard and preclude any meaningful analysis of the parties' legal arguments as they apply to this case. Therefore, the

Court grants Defendants' motion to dismiss Plaintiff's express and implied contract claims. Because the Court has found insufficient allegations to support the existence of a contract between Defendants and Plaintiff, the Court also dismisses Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. All of the breach of contract claims are dismissed without prejudice. The Court has not considered Defendants' argument that the breach of contract claims are also properly dismissed because they are preempted by the FLSA; this argument was made for the first time in reply.

**D.     NJLAD Claims**

1.     NJLAD Disability Discrimination

A prima facie case under the NJLAD for disability discrimination based on a failure to accommodate has three elements: "(1) plaintiff was disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment; and (3) plaintiff suffered an adverse employment action because of the disability." Victor v. State, 952 A.2d 493, 504 (N.J. Super. Ct. App. Div. 2008). Failure to engage in the interactive process of accommodation is a test under New Jersey law designed to satisfy the second prong of the Victor test. Tynan v. Vicinage 13, 798 A.2d 648, 657 (N.J. Super. Ct. App. Div. 2002). This test requires that a plaintiff show that "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Id.

Here, Plaintiff alleges that he "advised defendants of his disability and requested accommodation," and that "[r]ather than accommodat[ing] [him], defendants terminated him."

(Am. Compl. ¶¶ 97-98.)  Plaintiff's only specific allegation regarding accommodation is simply that "[r]ather than allow [Plaintiff] to work less hours and accommodate him due to his disability, Defendants provided [Plaintiff] a computer so that he could spend some of his work day working from home and maintain long hours."  (Id., at ¶ 17.)  He does not allege that he informed Defendants that, because of his disability, he needed an accommodation, that he requested an accommodation in the form of reduced hours, and that Defendants denied the request.  His own allegations show that Defendants permitted him to work from home and provided him with equipment to do so.  He only generally state that they did not allow him to work less hours.  The Court finds that this one allegation is insufficient to plead that he requested a specific accommodation and that Defendants denied that request.

     Additionally, the Amended Complaint alleges that he was required to return to work by November 20, 2010, but did not do so or seek clearance not to do so because he was not informed of this requirement.  (Am. Compl. ¶¶ 22-23.)  He alleges that because he did not return to work by that date, he was "inactivated on [Defendants'] employment roster."  (Id., at ¶ 21.)  Therefore, the Complaint appears only to allege facts showing that he was terminated because he failed to return to work within the required time frame; he has not alleged any facts to plausibly suggest that his termination was caused by his disability or his seeking of an accommodation.  In fact, the Amended Complaint alleges that he was terminated almost eight months after Defendants permitted him to work from home and six months after he went on disability leave.  Therefore, the Court finds that Plaintiff has insufficiently pled a NJLAD claim based on disability discrimination.

  2. NJLAD Retaliation

NJLAD makes it unlawful "[f]or any person to take reprisals against [another] person because that person has opposed any practices or acts forbidden under [the NJLAD] . . . ." N.J. Stat. Ann. § 10:5-12(d).  Thus, in order to set forth a prima facie case of unlawful retaliation under the NJLAD, a plaintiff "must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action."  Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).  Plaintiff alleges that "the termination occurred, in part, in retaliation of [Plaintiff] seeking disability leave and seeking accommodation."  (Am. Compl. ¶ 26.)  As noted above, Plaintiff's allegations are that Defendants gave Plaintiff the full six months of disability leave and only terminated him when he did not return to work after this period.  He has not alleged sufficient facts supporting a causal connection between his termination and any request for accommodation or his disability.  Therefore, his NJLAD retaliation claim also is dismissed without prejudice.

  **E.** **Pierce Claim**

"[A]n employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy."  Tartaglia v. UBS PaineWebber, Inc., 961 A.2d 1167, 1179 (N.J. 2008) (quoting Pierce v. Ortho Pharma. Corp., 417 A.2d 505, 510 (N.J. 1980)).  Plaintiff alleges that "[D]efendants retaliated against plaintiff for objecting to the non-payment of wages and/or delinquent payment of wages."  (Am. Compl. ¶ 76.)  Plaintiff does not allege that Defendants were aware that he spoke to the DOL to provide information for the investigation and subsequent complaint by the DOL.  But, given that Defendants are alleged to have offered him a settlement related to the overtime complaint in July 2008, it can be inferred

that Defendants were aware of the DOL complaint on his behalf at some point between October 2007 and July 2008. But, he was not terminated until the end of November 2008, almost five months from the date of the settlement offer and over a year from the DOL's investigation. He makes no other allegations to support his argument that his termination was because of the report to the DOL as opposed to other factors. In fact, as noted above, he specifically alleges that he was required to return to work by November 20, 2008, and that he was informed that because he did not return by this date, his employment status was "inactivated."

In essence, Plaintiff alleges that because he was terminated at some point after the DOL complaint, his termination must have been in retaliation for the complaint. But, temporal proximity between protected activity and an adverse employment action alone does not suffice to demonstrate causation for a whistleblowing/retaliation claim. See Hancock v. Borough of Oaklyn, 790 A.2d 186, 194 (N.J. Super. Ct. App. Div. 2002); see also Badrinauth v. MetLife Corp., No. 09-2631, 2010 WL 776807, at *3 (3d Cir. Mar. 9, 2010) (unpublished); House v. Carter-Wallace, Inc., 556 A.2d 353, 359 (N.J. Super. Ct. App. Div. 1989). This Court finds that Plaintiff's Pierce claim allegations as currently pled are based solely on speculation and are not sufficient to support a plausible claim of termination *because of* his reporting to the DOL. Therefore, Plaintiff's Pierce claim is also dismissed without prejudice.

### F. Claims Against C&S

C&S argues that it never employed Plaintiff–that Plaintiff was employed by Woodbridge. Therefore, it argues that all claims against it should be dismissed. But, for purposes of a motion to dismiss, all allegations in the Amended Complaint are taken as true. Plaintiff alleges that he was employed by C&S and/or Woodbridge. In his opposition brief he asserts his belief that he was employed by C&S as he was subject to its employee handbook guidelines, and that, only

through discovery, can he conclusively determine who his actual employer was for purposes of the claims asserted. The Court agrees with Plaintiff that he has adequately pled that C&S was his employer. C&S will have an opportunity through discovery to counter this assertion. C&S's motion to dismiss all claims against it on this basis is denied.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part. It is denied with respect to Plaintiff's FLSA claim (Count III) and with respect to C&S argument that the claims against it should be dismissed. It is granted with respect to Plaintiff's other claims. Counts I, II, IV, V, VI, VII, VIII, and IX are dismissed without prejudice to Plaintiff to amend the complaint to cure the deficiencies identified in this Opinion. An appropriate Order accompanies this Opinion.

DATED: July 8, 2010                         /s/ Jose L. Linares
                                                      JOSE L. LINARES
                                                      UNITED STATES DISTRICT JUDGE